IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KIHA SILVA,                          )    CIVIL NO. 11-00561 LEK-RLP
                                     )
          Plaintiff,                 )
                                     )
     vs.                             )
                                     )
THE CITY AND COUNTY OF               )
HONOLULU, KEITH DAVID MARINI         )
and DOE DEFENDANTS 1-10,             )
                                     )
          Defendants.                )
_____     )

**ORDER GRANTING IN PART AND DENYING IN PART (1) DEFENDANT CITY AND
COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT AND
(2) DEFENDANT KEITH DAVID MARINI'S MOTION FOR SUMMARY JUDGMENT,
AND DENYING (3) PLAINTIFF KIHA SILVA'S MOTION
FOR PARTIAL SUMMARY JUDGMENT AND FOR SANCTIONS
FOR DEFENDANTS' LOSS OR DESTRUCTION OF MATERIAL EVIDENCE**

          Before the Court are: (1) Defendant City and County of

Honolulu's ("City") Motion for Summary Judgment ("City Motion"),

filed January 30, 2013; (2) Defendant Keith David Marini's

("Marini") Motion for Summary Judgment ("Marini Motion"), filed

January 30, 2013; and (3) Plaintiff Kiha Silva's ("Plaintiff")

Motion for Partial Summary Judgment and for Sanctions for

Defendants' Loss or Destruction of Material Evidence

("Plaintiff's Motion"), filed January 30, 2013.  Defendants filed

their memorandum in opposition on April 8, 2013, and Plaintiff

filed his memoranda in opposition on April 7 and 8, 2013.

Plaintiff filed his reply on April 13, 2013, and Defendants filed

their replies on April 15, 2013.  These matters came on for

hearing on April 29, 2013.  Appearing on behalf of Plaintiff was Paul Smith, Esq., and appearing on behalf of Defendants was D. Scott Dodd, Esq.  After careful consideration of the motions, supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, these motions are HEREBY DENIED.

## BACKGROUND

Plaintiff filed his First Amended Complaint on July 16, 2012, alleging that Marini, a Honolulu Police Department ("HPD") officer, shot him following an altercation.  The First Amended Complaint states, in pertinent part:

> 10.  On March 29, 2009, an altercation occurred between Plaintiff and Defendant Marini involving the Plaintiff's alleged unauthorized entry into the Defendant Marini's motor vehicle.
> 11.  The Plaintiff was unarmed at the time of said altercation.
> 12.  Defendant Marini shot the Plaintiff multiple times with his service revolver, including one or more shots into the back of the Plaintiff.  Defendant MARINI made no effort to assist or obtain any medical attention for the Plaintiff after shooting and incapacitating the Plaintiff with the first gun shot to the Plaintiff's abdomen.  Rather, Defendant MARINI continued to fire into the defenseless and helpless Plaintiff.
>
> . . . .
>
> 14.  Defendant CITY AND COUNTY OF HONOLULU was responsible for the training of all police officers of Defendant CITY in the proper use of firearms and in the exercise of restrain in the use of weapons and employing force and in the performance of their duties as police officers. Defendant CITY trained Defendant MARINI in the use of firearms in accordance with the statutes, ordinances, regulations, customs, and usages of

2

Defendant CITY and the State of Hawaii.

. . . .

33.   Defendant MARINI was not justified in
using deadly force to prevent the Plaintiff's
escape, nor to shoot the unarmed Plaintiff one or
more times in the back as he tried to flee
Defendant MARINI.  At the time that officer MARINI
shot the Plaintiff, the Plaintiff was unarmed and
posed no significant threat of death or serious
physical injury to either Defendant MARINI or the
public at large if the Plaintiff were not
immediately apprehended.  As a result, the use of
deadly force on the Plaintiff was unreasonable and
totally without justification and are a violation
of the "fleeing felon" laws including *Tennessee v.
Garner*, 471 U.S. 1 (1985).  Defendant MARINI's
actions were willful and malicious.
34.   Defendant CITY AND COUNTY OF HONOLULU
was responsible for the training of all police
officers of defendant city in the proper use of
force and in the performance of their duties as
police officers, including arrest of suspects and
the proper use of service revolvers.  Defendant
CITY AND COUNTY OF HONOLULU was deliberately
indifferent to its obligations to properly
train/retrain Officer MARINI in the performance of
his duties as a police officer and to protect the
constitutional rights of the citizens of Honolulu,
including the use of force on suspects and the
public at large, said deliberate indifference
constituting a substantial factor in bringing
about the permanent injury of the Plaintiff.
Defendant City and County of Honolulu had an
inadequate training program with respect to the
use of lethal force on its citizens which resulted
in the deprivation of the constitutional rights of
the Plaintiff and harm to the Plaintiff.

Plaintiff alleges the following counts: (I) a 42 U.S.C.

§ 1983 claim based on violations of the Fourth Amendment; (II) a

§ 1983 claim based on violations of the Fourteenth Amendment;

(III) a claim for monetary damages against the City for his

3

§ 1983 claim under Monell v. Dep't of Social Services, 436 U.S. 658 (1978); (IV) a battery claim against Marini; and (V) claims for negligence and "willful and wanton" misconduct against Marini.

The Court previously granted in part and denied in part Defendants' Motion for Partial Judgment On the Pleadings.  In its June 29, 2012 Order ("Order"), the Court granted the motion without prejudice as to: (1) Defendants' request to extend the dispositive motions deadline; (2) Count I; (3) Count II as to the City only; (4) Count III; and (5) the "general averments."  The Court denied the motion as to: (1) Count II insofar as it relates to Officer Marini; and (2) Counts IV and V.  On October 30, 2012, the Court issued its Order Granting in Part and Denying in Part City and County of Honolulu and Keith David Marini's Motion to Dismiss First Amended Complaint ("10/30/12 Order").  [Dkt. no. 105.]  In that order, the Court dismissed Plaintiff's § 1983 claims in Count I against the City based upon a *respondeat superior* theory of liability, dismissed Plaintiff's § 1983 claims brought under the Eighth Amendment, and denied Defendants' motion in all other respects.

## I.   City Motion

The City now seeks summary judgment on Plaintiff's First Amended Complaint on the ground that Marini was not acting under color of law at the time of the incident.  It argues that,

4

because Marini was not acting under color of law, Plaintiff's § 1983 claims against both Marini and the City are barred, and that there is no liability against the City under any theory. The City also argues that Plaintiff's claims against it are barred by the doctrine set out in <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 (1994), because Plaintiff plead no contest to the criminal charge of Unauthorized Entry into Motor Vehicle ("UEMV") under Haw. Rev. Stat. § 708-836.5, on December 3, 2009, in the case of <u>State of Hawai`i v. Kiha Silva</u>, Cr. No. 09-1-0466. Last, the City argues that Plaintiff fails to establish a claim of municipal liability under § 1983. [Mem. in Supp. of City Motion at 1-2.]

The City states that the underlying incident involving Silva and Marini was investigated by Detective Brian Johnson of the Criminal Investigation Division ("CID"), and separately, Marini's actions were investigated by both the criminal and administrative sections of HPD's Professional Standards Office ("PSO"). According to the City, PSO Detective Dru Akagi investigated whether Marini's conduct violated any criminal laws, and presented his investigation to the Department of the Prosecuting Attorney. PSO Detective Michael Tamashiro investigated whether Marini's conduct constituted a violation of any of HPD's policies or procedures, and his investigation was presented to HPD's Administrative Review Board ("ARB") for

5

review.  The Department of the Prosecuting Attorney declined the
case for prosecution, and the ARB found that Marini's conduct did
not violate any standards of conduct.  [Id. at 4-5 (citing
Johnson Decl.; Tamashiro Decl.; Akagi Decl.).]

With respect to Plaintiff's Monell claim, the City
argues that the evidence shows that Marini was adequately trained
and that Plaintiff cannot establish deliberate indifference on
the part of the City in training HPD officers as a whole.  It
states that its Recruit Training Course, Use of Force Course, and
HPD policies are legally sufficient, and that officers are
trained to use deadly force only in cases of a threat to their
life or that of another person in imminent danger of death or
serious bodily injury.  [Id. at 8 (citing Jaeger Decl.).]

The City argues that, even if its investigation of
Marini's conduct was found to be inadequate, it does not
constitute a City policy of failing to properly investigate
complaints of excessive force, and that there is no evidence of
repeated constitutional violations for which the officers were
not discharged or reprimanded.  [Id. at 9-11 (citing Nakagawa
Decl.).]

As to Plaintiff's ratification claim, the City argues
that Plaintiff cannot establish that an official with final
policy-making authority ratified a subordinate's unconstitutional
action and the underlying basis for the action.  According to the

City, the Acting Chief of HPD at the time of the incident, Paul Putzulu, was informed that the ARB found that Marini's discharge of his firearm was justified and that no further action needed to be taken against him.  The City argues that, although Marini's actions were found to be acceptable by HPD, there is no evidence that "unconstitutional" conduct was ratified by a person with policy-making authority.  [Id. at 12-13.]

The City also argues that any *respondeat superior* claims fail because Marini's conduct was "not in the scope of his employment at the time of the incident."  [Id. at 14 (citing Marini Decl.; Nakagawa Decl.).]  It contends that he was not on duty because he was commuting to work and had stopped at a convenience store to purchase some personal items, that he was not wearing a police uniform, that he was not driving a marked police car, and that he did not display a police badge.  [Id.]

A. **Plaintiff's Opposition**

Plaintiff's version of the incident differs from that of Marini.  He claims that Marini shot him several times following a brief altercation in which he slapped Marini with an open hand, grazing his face.  According to Plaintiff, Marini then shot him multiple times, including in the back and buttocks, after Plaintiff was already wounded, on the ground, and trying to get away.  He also claims that Marini pointed his handgun at bystanders, keeping them at bay and preventing them from aiding

7

Plaintiff.  [Mem. in Opp. to City Motion at 4.]

According to Plaintiff, there are issues of fact regarding: (1) the extent and openness of the excessive force in the present case that managerial-level employees should have known; (2) municipal liability based on ratification; and (3) the City's failure to follow or enforce its own use of force policies.  Plaintiff also argues that there are issues of fact regarding the City's deliberate indifference to train or remove Marini following previous complaints of excessive force.

According to Plaintiff, HPD does not hold its officers accountable for lethal force, and, of eighty-eight instances of HPD officers employing lethal force through firearm discharges over the past ten years, only six resulted in any form of discipline, and only one in termination.  [Id. at 4 (citing Pl. Exh. 19 (Colburn Decl.)).]  He states that sixty-three of the eighty-eight incidents (including the instant case) were dismissed on "records review" alone, by looking only at the police reports without a hearing.  [Id.]

Plaintiff argues that there are genuine issues of material fact as to whether the City's two separate investigations adequately investigated the incident.  He also argues that there are genuine issues of material fact regarding the City's custom of failing to "discipline" or "reprimand" its officers involved in instances of excessive force,

notwithstanding evidence of excessive force.  [Id. at 24.]

With respect to his ratification theory, Plaintiff argues that the Chief of Police ratified the unconstitutional use of force, "notwithstanding obvious and overwhelming evidence of extreme excessive force on an unarmed individual." [Id. at 28.] He states that "The Chief of Police wrote a letter clearing Officer Marini.  The City/HPD's Chief of Police knew of the obvious excessive use of force employed by Officer Marini in this case, but nonetheless deliberately and knowingly chose to approve and ratify the use of excessive force by Officer Marini[.]" [Id. at 29 (citing Pl. Exh. 29 (HPD Disposition of Administrative Review)).]

Plaintiff next argues that there are issues of fact with respect to the City's deliberate indifference in failing to train or remove Marini following past incidents involving excessive force or to protect the public from the danger posed by Marini.  [Id. at 37-38.]

## B. **The City's Reply**

In its reply brief, the City first argues that Plaintiff offers no evidence to suggest that the City's officer training program as a whole is deficient.  [Reply to City Motion at 2-3.]  As to Plaintiff's failure to investigate or discipline claim, the City argues that its alleged failure to investigate in the instant case does not amount to a policy of failing to

investigate complaints of excessive force.  It also notes that Plaintiff does not provide evidence supporting his claim that over the past ten years there were eighty-eight instances of HPD officers employing lethal force through firearms discharges, and that only six of the eighty-eight resulted in any form of discipline, and only one in termination.  With respect to its investigation, the City notes that Plaintiff did not file any complaint with the City until March 14, 2011, two years after the incident occurred.  [Id. at 3-4.]  The City argues that, even if the investigation of Plaintiff's own incident was "inadequate" or "improper," this would not give rise to municipal liability on a failure to investigate or discipline theory.

The City asserts that Plaintiff's ratification claim likewise fails because he provides no evidence other than his arguments that the City failed to reprimand Marini.  According to the City, because the failure of a police department to discipline in a specific instance is not an adequate basis for municipal liability, it City is entitled to summary judgment on the ratification claim.  [Id. at 8-12.]

## II.  **Marini Motion**

Marini moves for summary judgment on several of the same grounds as the City; he argues that Plaintiff's claims are barred because Marini was not acting under color of law, because Plaintiff was convicted of UEMV, and because Marini is protected

10

by qualified immunity and the doctrine of conditional privilege. [Mem. in Supp. of Marini Motion at 1-2.]

Marini's Declaration sets forth the following chronology of events from March 29, 2009:  Marini was off duty and had stopped at the Makaha 7-Eleven store located at 85-010 Farrington Highway, Waianae, Hawaiʻi, to get a cup of coffee and some chewing gum; he was on his was to his work shift which started at 6:00 a.m. at the Kalihi police substation.  After he made his purchases he exited the store and proceeded to his vehicle.  He opened the door, sat in his unmarked vehicle with the door open as he placed his cup of coffee in the cup holder, and prepared for the remainder of his commute to the Kalihi police substation.  With the driver's side door open and his left foot on the pavement, he felt the presence of someone standing over his left shoulder; he turned his head to the left and as he did so he was struck several times in the jaw and head.  He heard a male voice yelling and threatening him.  According to Marini, his vision appeared to blur he felt that he might lose consciousness.  His supplemental firearm, a nine millimeter handgun, was in a small waist bag on the passenger seat of his vehicle, and a shotgun was in the back seat of the vehicle.  He retrieved his supplemental firearm from the waist bag and fired three rounds in quick succession from a seated position in the vehicle at the male who had assaulted him.  [Id. at 4-6 (citing

Marini Decl. at ¶¶ 3-6).]

Marini did not know or recognize Plaintiff.  Marini states that, immediately after he fired the shots and Plaintiff fell to the ground, Marini exited his vehicle, stood up and trained his firearm on Plaintiff.  Marini knew that there were other males in the immediate area that Marini believed might have accompanied Plaintiff, and Marini was concerned that these other individuals might continue the unprovoked attack upon him. After he exited the vehicle, Plaintiff was no longer acting aggressively, and Marini states that he believed Plaintiff would not further assault him; he then used the police radio in his vehicle and called for police assistance.  He looked up and noticed that Plaintiff was already gone and observed a white vehicle leaving the parking lot of the 7-Eleven.  Marini provided additional details on the suspect vehicle to police dispatch as the vehicle fled the scene, and waited for on duty police officers to respond to the location.  [Id. at 6 (citing Marini Decl. at ¶ 6).]  Defendants provide video surveillance footage from the 7-Eleven, which shows Marini enter the 7-Eleven to purchase items, return to his car, and then there appears to be movement by his car door.  The video quality is poor, and shows Plaintiff quickly move away from the vehicle.  [Defendants' Concise Statement of Facts ("CSOF"), Exh. 3 (DVD).]

As to Plaintiff's failure to render aid claim, Marini

argues that the incident lasted approximately forty seconds, from when Plaintiff exited the white Honda in the 7-Eleven parking lot to when he returned and got back into it.  Plaintiff and his friends then left the scene in the vehicle, and Marini argues that there was no opportunity for Marini to provide medical aid due to the briefness of the incident and because Plaintiff left before the scene was ever made safe.  [Mem. in Supp. of Marini Motion at 26.]

Marini also argues that he did not violate Plaintiff's Fourteenth Amendment rights because his conduct does not "shock the conscience," and that, because Plaintiff has alleged an unlawful seizure, his alternative Fourteenth Amendment claim should be dismissed.  [Id. at 26-27.]

Marini further argues that he is entitled to summary judgment on Plaintiff's negligence claim because Plaintiff is unable to establish either a duty, breach, or causation.  He asserts that there is no duty under state law to not pursue a suspect when there is probable cause to believe the suspect has committed a crime.  Even if he did owe Plaintiff a duty, Marini argues that his own conduct was intentional, and not negligent. [Id. at 28-29.]  As to Plaintiff's assault and battery claims, Marini argues that his own conduct was justified because he acted to defend his life and safety.  Marini further argues that he is entitled to the defense of conditional privilege for all of the

state common law claims because Plaintiff cannot prove malice by clear and convincing evidence.  [<u>Id.</u> at 30-31.]

A.   <u>Plaintiff's Opposition</u>

In addition to the arguments he makes in opposition to the City's Motion, Plaintiff claims that there are issues of fact regarding whether Marini was acting under color of law because he told bystanders that he was a police officer, and pointed his weapon at them to keep them from assisting Plaintiff.  Plaintiff contends that Marini was required to carry a service revolver at all times, and that he used lethal force to seize Plaintiff and prevent his escape.  [Mem. in Opp. to Marini Motion at 10-12, 14.]  According to Plaintiff, Marini was acting within the scope of his employment at the time of the shooting because:  Marini was required to carry a service revolver with him at all times; he used government ammunition and maintained a loaded HPD shotgun in his back seat; and because he "seized" Plaintiff, and performing an arrest was part of Marini's responsibility. Plaintiff argues that, although Marini may have been off duty, he was still on the job as a Honolulu Police Officer and "used the trappings and power of his office to, at a minimum, attempt to effectuate an arrest or seizure of the Plaintiff and keep bystanders, who could and would have otherwise aided Silva, at bay."  [<u>Id.</u> at 19.]

Next, Plaintiff argues that Marini is not entitled to

14

qualified immunity because a police officer may not seize an unarmed, non-dangerous suspect under <u>Tennessee v. Garner</u>, 471 U.S. 1, 11-12 (1985).  [<u>Id.</u> at 21-28.]

He further contends that there are issues of fact with respect to his claim for violation of the Fourteenth Amendment for failure to render aid.  Plaintiff argues that he had a due process right to prompt medical attention as an uncharged and unconvicted detainee.  [<u>Id.</u> at 28-29.]

With respect to his state law claims, Plaintiff argues that there are issues of fact as to whether Marini was negligent and committed assault and battery.  He also asserts that there is no conditional privilege in the context of arrest or using force that requires him to prove actual malice by clear and convincing evidence, and that such a requirement would be unconstitutional. [<u>Id.</u> at 32-38.]

**B.   <u>Defendants' Reply</u>**

Marini first argues that he was not acting under color of law because he was off duty at the time of the shooting, and that even if he is subject to discipline for off duty conduct, this does not mean that he was within the scope of employment. [Reply to Marini Motion at 6-7.]

Next, Marini argues that <u>Heck</u> does apply here to bar Plaintiff's excessive force claim because the conviction for UEMV was for the assault upon Marini.  According to Marini, it is "not

reasonable to separate Marini's actions from Plaintiff's assault." [Id.] Marini argues that, here, there was no "investigative" phase; he simply responded with force when the Plaintiff assaulted him, and that his first awareness of Plaintiff was when Plaintiff struck him about the head and face. [Id. at 12.]

Marini argues that Plaintiff's medical needs claim fails because he gave Marini no opportunity to provide the medical care he claims he was denied, nor did he ever request medical assistance. [Id.]

## III. **Plaintiff's Motion**

Plaintiff moves for partial summary judgment and for sanctions for loss or destruction of evidence on the following grounds:

(1) Lack of any genuine issue of material fact that Defendant Keith Marini (Defendant Marini or Officer Marini) shot the Plaintiff twice in the back;

(2) Lack of any genuine issue of material fact that at the time Defendant Marini shot the Plaintiff in the back the Plaintiff was unarmed;

(3) Lack of any genuine issue of material fact that prior to shooting the unarmed Plaintiff twice in the back that Defendant Marini gave the Plaintiff no verbal warnings or commands of any sort and failed to identify himself as a police officer; and

(4) Lack of any genuine issue of material fact that Defendant Marini's shooting of the unarmed Plaintiff twice in the back in the absence of any warnings was unreasonable and/or

16

constitutes excessive force in violation of the prohibition contained in the Fourth Amendment of the United States and Hawaii Constitutions against unreasonable search and seizures.

Lastly, Plaintiff requests appropriate sanctions pursuant to this Court's inherent powers and pursuant to Fed. R. Civ. P. Rule 37 for the Defendants' loss or destruction of material evidence and/or the failure to preserve material evidence consisting of photographs taken of Defendant Marini the day after the shooting incident confirming no visible injuries or bruising from an essential (sic) minor scuffle with the Plaintiff.

[Pl. Motion at 1-2.]

Plaintiff first argues that medical evidence establishes that he was shot in the left lower back and left buttocks.  He contends that multiple CT scans show a gunshot "entrance wound" to his "left lower back with a defined bullet tract leading to a bullet lodged in the tissues of [his] right back."  [Mem. in Supp. of Pl. Motion at 10-11 (citing Pl. CSOF in Supp., Exh. 3 (Exh. B, Queens Radiology Reports)).]  Plaintiff also submits medical expert opinion that he "'sustained two separate gun-shot entrance wounds to his left back and buttocks.'"  [Id. at 12 (quoting Pl. Exh. 2 (7/31/12 Report of Stephen Holmes, M.D.)).]

Plaintiff asserts that he is entitled to summary judgment because Marini shot him twice in the the back, without warning or identifying himself as a police officer, and when Plaintiff was not armed.  Further, he argues that a police

17

officer cannot continue to use deadly force once the danger has abated.  [Id. at 19-20.]

As to the missing photographs taken of Marini after the incident, Plaintiff argues that they would show that Marini did not suffer serious injuries during the altercation and that he exaggerated the level of threat to cover up his excessive use of force.  Plaintiff states that he has black and white copies of the photographs, but that they are worthless because they are poor quality "photocopies of photocopies." [Id. at 28.]  He argues that Defendants knew a civil rights case would likely be filed because Plaintiff made statements that he wanted to press charges to a different responding officer on March 29, 2009.  Plaintiff states that it was inexcusable for Defendants to not have preserved material evidence given the high likelihood of a lawsuit.  [Id. at 30-32.]  Plaintiff asks the Court to grant summary judgment, "finding that the missing evidence would have provided refutation to Defendants' claim the force, including lack of warning, was somehow justified because the attack was supposedly so severe." [Id. at 32.]

B.   **Defendants' Opposition**

Defendants argue that Plaintiff's Motion should be denied because there are disputed issues of material fact, and because Plaintiff fails to establish that he meets the elements of a § 1983 claim.  They also argue that Plaintiff's request for

18

sanctions based on two lost photographs should be denied.  [Mem. in Opp. to Pl. Motion at 3.]

According to Defendant, Plaintiff's Motion is misleading and ignores evidence which contradicts his theory. For example, Defendants claim that Plaintiff mischaracterizes the initiation of the incident as a "minor altercation" with Marini. [Id. at 5-6.]  Defendants also contest Plaintiff's recounting of the circumstances of the shooting, including how many shots were fired and where Marini was located during the shooting. According to Defendants, Marini fired three shots in total at Plaintiff, and all of the shots were fired while Marini was sitting in his vehicle, and while Plaintiff was in the process of continuing to assault him.  Marini claims that he fired the shots from the driver's seat position of his vehicle, with Plaintiff attacking him from behind him to his left, and that he was not able to carefully aim his weapon and place his shots.  [Id. at 7-9.]  Defendants also cite their expert, D.P. Van Blaricom's report, which notes that Marini was 50 years old and by himself, while Plaintiff was 25 years old and accompanied by two male companions; Marini was caught off guard; and Marini was concerned that if he did lose consciousness, Plaintiff would have had access to his off-duty pistol and shotgun.  [Id. at 9 (citing Exh. 4 (Report of Defendants' Police Practices Expert)).]

Defendants also contest the conclusions to be drawn

from the medical evidence.  They state that hospital treatment records cannot be relied upon for accurate gun shot wound descriptions, because the treating physicians are not trained pathologists and they are untrained in describing gun shot wounds and cannot distinguish between "entries" and "exits."  [Id. at 10 (citing Exh. 4 (Report of Defendants' Police Practices Expert), at 6-7).]  They also dispute Plaintiff's characterization of Marini shooting Plaintiff one or more times while Marini was still in the car, then emerging to shoot Plaintiff additional times while Marini was outside the vehicle.  Marini maintains that he fired three shots, and that each shot he fired was done while was seated in his vehicle, in order to protect himself from Plaintiff's assault.  [Id. at 11.]

As to Plaintiff's arguments that he was unarmed and that Marini gave no warning before using lethal force, Defendants argue that Plaintiff does not address whether Marini reasonably believed that either Plaintiff, or one of his companions at the time of the incident, were armed at the time.  In Marini's version of events, Plaintiff told Marini between the three blows and then the shots fired by Marini, "I gonna fuckin' kill you," and was coming back at Marini to continue his assault, while Marini was seated part-way in his car.  According to Marini, although Plaintiff was not armed, he posed a serious risk of death or serious bodily injury at the time of the shooting.

Defendants argue it is unrealistic for Marini to have given a warning before firing his weapon in defense under these circumstances.  [Id. at 12-14.]

With respect to the photographs, Defendants note that Marini never had possession of them, or any copies thereof, therefore, he cannot be sanctioned for their loss.  They also state that Plaintiff has already received monetary sanctions for the City's inability to produce the photographs of Marini. Further, the City states that numerous photos taken of Marini as part of the investigation – not photocopies – were provided to Plaintiffs.  The photographs are close ups and show the areas where Marini was struck by Plaintiff "in far more detail than the photographs which have not been located, which show Marini's entire upper torso."  [Id. at 16.]  Defendants argue that diligent efforts have been made to locate the photographs, and Plaintiff has already received sanctions for the City's failure to produce the photographs, and ask that Plaintiff's request for sanctions be denied.  [Id. at 18 (citing Murobayashi Decl.; Yuen Decl.).]

C. **Plaintiff's Reply**

Plaintiff argues in reply that Marini is required to justify each gunshot fired, but that there is no justification for the "gunshots he fired into Silva's back and buttocks when Silva's back was turned. . . .  All he had to do was stop

21

shooting." [Reply to Pl. Motion at 4-5.] Plaintiff also maintains that Marini had time to issue a warning or command and call for back-up once Plaintiff fell to the ground and turned away after being shot the first time. [Id. at 6.]

Plaintiff also argues that Marini cannot avoid partial summary judgment based on the defense expert's statement that Marini feared for his safety. [Id. at 8-9.]

With respect to the missing photos taken the day after the incident, Plaintiff argues that absent the next day photographs, "the photos taken on the day of the incident are incomplete. Together they show a before (before time for bruising/swelling to develop) and after (after time for bruising/swelling/marks to develop) of no injury to Marini." [Id. at 16.] He argues that the photos taken the day after the incident are the best evidence of whether Marini was justified to use the force he did, and that a curative instruction alone will not remedy the loss of tangible evidence to his case.

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

## I.  City Motion

A.   <u>**Section 1983: Under Color of Law**</u>

Under 42 U.S.C. § 1983:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage . . .
> subjects, or causes to be subjected, any citizen
> of the United States . . . to the deprivation of
> any rights, privileges, or immunities secured by
> the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress. . . .

Defendants argue that Marini was not acting "under color of law" at the time of the incident.  Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.  <u>West v. Atkins</u>, 487 U.S. 42, 50 (1988).  The Supreme Court has interpreted the phrase "under 'color' of law" to mean "under 'pretense' of law."  <u>Screws v. United States</u>, 325 U.S. 91, 111 (1945).  A police officer's actions are under pretense of law only if they are "in some way 'related to the performance of his official duties.'"  <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 838 (9th Cir. 1996) (quoting <u>Martinez v. Colon</u>, 54 F.3d 980, 986 (1st Cir. 1995)).  The Court first examines several cases involving off-duty law enforcement officers before turning to the analysis of the instant facts.

In <u>Huffman v. County of Los Angeles</u>, 147 F.3d 1054, 1058 (9th Cir. 1998), an off-duty sheriff's deputy shot and killed plaintiffs' decedent during a bar fight.  The deputy was not in uniform and was carrying his personal, off-duty revolver.

23

147 F.3d at 1058.  This personal firearm, however, was loaded with department-issued ammunition and the deputy carried his official identification.  Id.  When he met the victim, whom he did not previously know, in the bar, the deputy did not identify himself as law enforcement, but instead said he owned an air conditioning company.  Id.  At some point, the conversation became heated and aggressive, the deputy left the bar, and the plaintiffs' decedent tackled the deputy to the ground.  The deputy never identified himself as a police officer and did not issue any commands before he fired his gun into the victim's chest, killing him.  The Ninth Circuit explained the color of law inquiry as follows:

> A police officer's actions are under pretense of law only if they are in some way related to the performance of his official duties. . . .  By contrast, an officer who is pursuing his own goals and is not in any way subject to control by his public employer . . . does not act under color of law unless he purports or pretends to do so, . . . .  Officers who engage in confrontations for personal reasons unrelated to law enforcement, and do not purport or pretend to be officers, do not act under color of law.

Id. (internal quotations, brackets, and citations omitted).

In Huffman, the Ninth Circuit noted that the deputy was not on duty and was not wearing his uniform.  Although the weapon he carried was loaded with ammunition supplied by the department, the weapon was his own.  Id.  He never identified himself as a police officer and never issued any commands to the plaintiffs'

24

decedent.  The court found that the deputy did not act pursuant to his official duties and the facts did not support that he purported or pretended to act as a police officer.  As a result, the Ninth Circuit concluded that he had not acted under color of state law.  Id.

In Van Ort v. Estate of Stanewich,, 92 F.3d 831 (9th Cir. 1996), Stanewich, a sheriff's deputy, attempted to rob the Van Orts' residence after having earlier performed, while on duty, a search for illegal drugs.  When Stanewich was off-duty, he returned to the Van Orts' home and entered it, either forcibly or possibly after being recognized by the occupants.  It was undisputed that he did not display his badge and he denied being a police officer.  Stanewich attacked and tortured the Van Orts, one of whom escaped and called 911.  The responding police officer entered the home, ordered the intruder to freeze, and shot him when he failed to comply, killing Stanewich.  The Van Orts brought suit, and, in addressing the color of state law issue, the court concluded that Stanewich was pursuing his own goals and was not in any way subject to control by his public employer.  Id. at 838.  Although the plaintiffs did not contest this point, they argued that Stanewich used his status and privileges as a law enforcement officer to gain entry to their home and to commit his crime and, thus, he acted under color of state law.  Id.  The plaintiffs contended that, because Stanewich

carried handcuffs and a gun and was perceived by Donald Van Ort to be acting as a police officer and allowed to enter the home due to that perception, Stanewich's acts were under color of state law.  Id. at 839.  The court noted that, if Stanewich had purported to or pretended to act under color of law, even if his goals were private and outside the scope of authority, he was acting under color of state law.  Id.  The court further noted that Stanewich could have been acting under color of state law if the Van Orts had been injured during a meeting "related to the provision of services pursuant to Stanewich's County employment," and if Stanewich had used his "'government position to exert influence and physical control' over the Van Orts, particularly if they were 'in awe of government officials.'"  Id. (quoting Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 480 (9th Cir. 1991)) (brackets omitted).  The court concluded that "Stanewich exerted no meaningful, physical control over Donald on the basis of his status as a law enforcement officer.  Thus, Stanewich's acts were not under color of law."  Id. at 839–40.

Finally, in Anderson v. Warner, 451 F.3d 1063 (9th Cir. 2006), the Ninth Circuit considered whether a Sherriff's Department jail commander was acting under color of law when he assaulted a motorist who rear-ended him, and told bystanders he was "cop" and to "stay back."  In Anderson, the Ninth Circuit found that Warner was acting under color of state law "when he

26

invoked his law enforcement status to keep bystanders from interfering with his assault on Anderson." Id. at 1068.  The court laid down "three critical requirements that must be satisfied": (1) the acts complained of must have been "'performed' while the officer is acting, purporting, or pretending to act in the performance of his or her official duties"; (2) the "pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others"; and (3) the acts complained of must be "'related in some meaningful way either to the officer's governmental status or to the performance of his duties.'" Id. at 1068-69 (quoting Martinez v. Colon, 54 F.3d 980, 987 (1st Cir. 1995)).  The Anderson court explained that the "third requirement means that Warner must have used 'the badge of [his] authority' to deprive an individual of his rights, by invoking his 'governmental status' to influence the behavior of those around him." Id. at 1069 (citation omitted, brackets in original).

These cases collectively set forth several factors relevant to the issue of when an off-duty police officer purports or pretends to act pursuant to official authority.  First are the indicia of authority such as wearing a uniform, displaying a badge, brandishing a weapon, identifying oneself as an officer, issuing commands, or intervening in a dispute.  Next, there are situations in which an officer may exert such meaningful,

27

physical control over another on the basis of his status as a law enforcement officer that the officer's actions may amount to official conduct under color of state law.  As explained in Anderson, however, "[t]here is no 'rigid formula' for determining whether a state or local law official is acting under color of state law."  451 F.3d at 1068 (citing Ouzts v. Md. Nat'l Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974)).

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that whether Marini was acting under color of law is an issue of fact that cannot be resolved on summary judgment.  Marini claims that he was not on duty because he was on his way to work and had stopped at the convenience store only to purchase some personal items, not to perform any kind of investigation or other police work.  He was not wearing a police uniform, and did not have his police badge or firearm displayed on his person.  Marini did not have a blue police light affixed to the top of his vehicle, and he never identified himself as a police officer to Plaintiff until after all shots had been fired.  Marini asserts that he never attempted to arrest, detain or otherwise seize Plaintiff, but that he acted only in self-defense.  [Marini Decl. at ¶ 7.]  Plaintiff argues that Marini identified himself as an officer to bystanders, and pointed his service revolver at them in order to keep the crowd back.  According to Ron Mendoza, who was also a passenger in the

white Honda, he heard Marini say that he was an "officer," which

Mendoza understood to mean that he was a "cop."  [Pl. Exh. 31

(3/29/09 Recorded Mendoza Statement).]  According to Shane Silva,

"[o]nce the man pointed the gun at me I didn't get any closer or

go to my brother."  [Pl. Exh. 33, Shane Silva Decl. at ¶ 8.]

Defendants dispute this record.  These allegations, if true,

however, could be sufficient indicia that Marini invoked his

authority as an officer under <u>Huffman</u> and <u>Anderson</u>.

        Viewing the facts in the light most favorable to the

non-moving party, and when all of the circumstances of the

encounter are considered, the Court concludes that there is a

question of fact regarding whether Marini was acting under color

of state law as a matter of law.  Although the issue is very

close, the Court finds that Defendants have not met their burden

on summary judgment.

 **D.** ***Respondeat Superior* Liability**

  "Under the theory of respondeat superior, an
employer may be liable for the negligent acts of
its employees that occur within the scope of their
employment."  <u>Wong-Leong v. Hawaiian Independent
Refinery, Inc.</u>, 76 Hawai'i 433, 879 P.2d 538, 543
(Haw. 1994).  To determine whether a tort was
committed within the scope of employee's
employment under Hawaii law, Hawaii courts follow
the Restatement of Agency § 228, which provides
that:

   (1) Conduct of a servant is within the scope
of employment if, but only if:

    (a) it is of the kind he is employed to
perform;

(b) it occurs substantially within the authorized time and space limits; [and]

(c) it is actuated, at least in part, by a purpose to serve the master[.] . . .

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Wong-Leong, 879 P.2d at 543. "In determining the scope of employment, the applicable test is whether the employee's conduct was related to the employment enterprise or if the enterprise derived any benefit from the activity." Id. at 546. "Whether an employee is acting within the scope of his or her employment is ordinarily a question of fact to be determined in light of the evidence of the particular case." Id. at 543.

The Restatement of Agency section 229 provides that "[t]o be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." Restatement of Agency 2d § 229 (1958). The comments provide that

a servant is authorized to do anything which is reasonably regarded as incidental to the work specifically directed or which is usually done in connection with such work ... [a]lthough an act is a means of accomplishing an authorized result, it may be done in so outrageous or whimsical a manner that it is not within the scope of employment.

Restatement § 229 comments a and b. Following the Restatement, the Hawaii Supreme Court has noted that an act, "although forbidden, or done in a forbidden manner, may be within the scope of employment . . . the ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business[.]"

30

> State v. Hoshijo ex rel. White, 102 Hawai'i 307,
> 76 P.3d 550, 563 n.29 (Haw. 2003) (finding that
> the actions of a student manager of the state
> university basketball team in shouting racial
> slurs at a spectator at a basketball game was
> conduct within scope of employment because he was
> required to attend games, work on the bench,
> assist the team, it was foreseeable that he would
> interact with the public at games, and the
> handbook proscribed use of obscene or
> inappropriate language to spectators).

Ho-Ching v. City & Cnty. of Honolulu, CV. No. 07-00237 DAE-KSC,

2009 WL 1227871, at *13 (D. Hawai'i Apr. 29, 2009).

Based on the current record, and for reasons similar to

its conclusion regarding whether Marini was acting "under color

of law" for purposes of § 1983, the Court finds that there are

questions of fact regarding whether Marini was acting within the

"scope of employment" for purposes of respondeat superior

liability.  Viewing the facts in the light most favorable to

Plaintiff, the Court finds that the City has not met its burden

on summary judgment.

### C.   **Section 1983: Municipal Liability**

The Court next turns to Plaintiff's § 1983 municipal

liability claims.

#### 1.   **Failure to Train**

With respect to Plaintiff's claim for failure to train,

the City argues that the evidence shows that Marini was

adequately trained and that Plaintiff cannot establish deliberate

indifference on the part of the City in training HPD officers as

31

a whole.  Defendants state that the Recruit Training Course, Use of Force Course, and HPD policies are legally sufficient, and that officers are trained to use deadly force only in cases of a threat to their own life or that of another person in imminent danger of death or serious bodily injury.  [Id. at 8 (citing Jaeger Decl.).]

> Only in "limited circumstances" can such an "official municipal policy" arise from "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." [Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).] "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822–23, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)).  Thus, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" Id. (quoting Canton [v. Harris], 489 U.S. [378, 388 (1989)] (brackets omitted).

> Proving "deliberate indifference" is not easy.  Connick reiterated that "'[d]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 1360 (quoting [Bd. of County Comm'rs of] Bryan Cnty. [v. Brown], 520 U.S. [397,] 410, 117 S. Ct. 1382 [(1997)]).  Disregarding "a known or obvious consequence" means "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]" Id.  If such notice exists, then a municipality "may be deemed deliberately indifferent if the policymakers choose to retain that program." Id.  (citing Bryan Cnty., 520 U.S. at 407, 117 S. Ct. 1382).

> In turn, to prove "actual or constructive notice" of a constitutionally-significant gap in training, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees." Id. But Connick also reaffirmed the alternative "single-incident" theory of liability: a particular "showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." Id. at 1361. Connick reemphasized that this single-incident theory is possible only "in a narrow range of circumstances." Id. (quoting Bryan Cnty., 520 U.S. at 409, 117 S. Ct. 1382). The situation is "rare" — "the unconstitutional consequences of failing to train" must be "patently obvious" before a municipality can be liable under § 1983 without proof of a pre-existing pattern of violations. Id. And a violation of a protected right must be a "highly predictable consequence" of a decision not to train. Id. (quoting Bryan Cnty., 520 U.S. at 409, 117 S. Ct. 1382). Emphasizing its difficulty of proof, Connick nevertheless left open (as a general matter) the exceptional possibility that a failure in a municipality's training program could be so obviously deficient that it could lead to liability for damages resulting from a single violation. Id.

Wereb v. Maui County, 830 F. Supp. 2d 1026, 1031-32 (D. Hawai'i 2011).

In the instant case, although the issue is close, the Court finds that Plaintiff has failed to meet his burden for his failure to train claim. Plaintiff provides evidence of prior firearm discharges by Marini that resulted in internal investigations, and in one instance, a suspension. Specifically, Plaintiff raises three previous incidents involving Marini: (1) a 1994 shooting of a motorcyclist in the leg, allegedly from

33

behind; (2) a 2000 complaint by Marini's wife resulting in suspension; and (3) a 2002 discharge, in which Marini's wife reported him for firing his police weapon inside their home. [Id. at 37-38 (citing Pl. Exh. 27 (Police Report No. 94267626), Exh. 28 (HPD Suspension), and Exh. 16 (1/15/13 Marini Dep. Tr.)).]  While these incidences raise questions regarding the City's failure to train Marini, they do not establish a "policy."

> Although the issue of whether a municipality has displayed a policy of deliberate indifference is generally a question for the jury, see Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1478 (9th Cir. 1992), the Ninth Circuit has been clear that summary judgment for a municipality is proper on a failure to train theory when the plaintiff produces evidence showing only that the training of the officers involved in the alleged wrongdoing was inadequate.

Bartolome v. City & Cnty. of Honolulu, Civil No. 06-00176 SOM/LEK, 2008 WL 2736016, at *5 (D. Hawai'i July 14, 2008); see id. ("[E]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy."). Nor has Plaintiff sufficiently met the narrow circumstances giving rise to a claim under Connick's single-incident theory. Thus, even viewing the facts in the light most favorable to Plaintiff, the Court finds the City is entitled to summary judgment on Plaintiff's failure to train claim.  The City Motion is GRANTED as to Plaintiff's claim for municipal liability based upon a failure to train Marini.

## 2.   **Failure to Investigate**

A plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." Gillette v. Delmore, 979 F .2d 1342, 1349 (9th Cir. 1992).  Here, the Court agrees with the City that, even if its investigation of Marini's conduct was found to be inadequate, it does not constitute a City policy of failing to properly investigate complaints of excessive force.  That is, there is insufficient evidence of a "whitewash" of investigations.  The alleged inadequacy of the investigation of the instant matter is insufficient to create an issue of fact as to whether the City has a policy of failing to properly investigate or discipline its officers.  Liability for an improper policy generally cannot be based on a single incident. See, e.g., Trevino v. Gates, 99 F.3d 911, 915 (9th Cir. 1996); Meehan v. Los Angeles Cnty., 856 F.2d 102, 107 (9th Cir. 1998) (two incidents insufficient to establish a custom).  Even if the investigations in the instant incident were insufficient, Plaintiff fails to demonstrate a municipal policy of failing to investigate.  The City Motion is therefore GRANTED as to Plaintiff's claim for municipal liability based upon a failure to investigate.

## 3.   **Ratification**

Here, Acting Chief Putzulu accepted ARB's finding that Marini's conduct, including discharging his firearm, was justified and that no further action need be taken against him. The City does not dispute that he was a "policy-maker" and that he chose not to further discipline Marini.  See Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (ratification requires proof of a policy-maker's knowledge of the alleged constitutional violation); Trevino, 99 F.3d 911 at 920 (ratification requires an adoption and express approval of the acts of others who caused the constitutional violation); Gillette, 979 F.2d at 1348 (an official policy-maker must "make a deliberate choice from among various alternatives to follow a particular course of action"). The City argues that, although Marini's actions were found to be acceptable by HPD, there is no evidence that "unconstitutional" conduct was ratified by a person with policy-making authority. Because the Court denies summary judgment as to whether the underlying conduct was "unconstitutional," the Court also denies the City's request for summary judgment regarding the ratification of such conduct.

Further,

[t]he Ninth Circuit noted that a single decision by a policymaker may be sufficient to approve a subordinate's decision, ratifying that decision for purposes of § 1983 liability.  However, the Ninth Circuit said that the plaintiff must show the decision was the product of a conscious, affirmative choice to ratify the conduct in question.  Such a ratification "could be

36

tantamount to the announcement or confirmation of
a policy for purposes of <u>Monell</u>."

<u>Edenfield v. Estate of Willets</u>, No. Civ. 05-00418 SOM/BMK, 2006
WL 1041724, at *16 (D. Hawai'i Apr. 14, 2006) (quoting <u>Haugen v.
Brosseau</u>, 339 F.3d 857, 875 (9th Cir.2003), rev'd on other
grounds by <u>Brosseau v. Haugen</u>, 543 U.S. 194 (2004) (per curiam)).
Here, viewing the facts in the light most favorable to Plaintiff,
the allegations of multiple shots fired at Plaintiff after he was
injured by the first shot and retreating raises a question about
whether a reasonable administrator should have found the shooting
justified under the entirety of the circumstances.  <u>See</u> <u>id.</u>
Although the issue is close, the Court finds that, viewing the
facts in the light most favorable to Plaintiff, there is
sufficient evidence to survive the instant motion.  The City
Motion is therefore DENIED with respect to Plaintiff's § 1983
claim based on a ratification theory.

     **D.**   **<u>Heck v. Humphrey</u>**

     Defendants argue that Plaintiff's § 1983 claims are
barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994)**,** to the extent he
seeks damages for unlawful conviction or imprisonment**,** based on
his UEMV conviction under a no contest plea.  Plaintiff contends
that the <u>Heck</u> case does not apply here because, although he plead
"no contest" to the UEMV charge, his instant § 1983 claim does
not implicate or invalidate that conviction.  He argues that the

UEMV conviction was based on events that occurred well before
Marini exited his vehicle and shot the Plaintiff.  [Id. at 17-
20.]

> In Heck, the Supreme Court held:
>
> [T]o recover damages for an allegedly
> unconstitutional conviction or imprisonment, or
> for other harm caused by actions whose
> unlawfulness would render a conviction or sentence
> invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct
> appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make
> such determination, or called into question by a
> federal court's issuance of a writ of habeas
> corpus[.]

512 U.S. at 486-87 (footnote omitted).  Thus, any claim for
damages based upon a conviction or sentence that has not been so
invalidated is not cognizable.  Id. at 487.  A § 1983 "cause of
action for damages attributable to an unconstitutional conviction
or sentence does not accrue until the conviction or sentence has
been invalidated."  Id. at 489-90 (footnote omitted).

In Smith v. City of Hemet, 394 F.3d 689 (9th Cir.
2005), the Ninth Circuit stated: "Under Heck, [plaintiff] would
be allowed to bring a § 1983 action, however, if the use of
excessive force occurred *subsequent* to the conduct on which his
conviction was based."  Id. at 698 (emphasis in original).

Here, the parties contest the circumstances of the
original altercation, as well as the location and sequence of
events that followed it.  It does appear that Plaintiff's UEMV

charge was based on the particular conduct involved in his assault on Marini, and the City argues that the initial altercation cannot be separated from Marini's response.  Based on the disputed factual record, however, and viewing the facts in the light most favorable to Plaintiff, the Court is unable to determine whether the alleged use of excessive force occurred during or subsequent to the conduct that formed the basis for the UEMV conviction.  Because there is an issue of fact, the City Motion is DENIED on this point.

In sum, the City Motion is GRANTED with respect to Plaintiff's claims for § 1983 municipal liability based upon failure to train or investigate theories, but DENIED in all other respects.

## II.  Marini Motion

For the same reasons discussed above with respect to the City Motion, the Marini Motion is DENIED as to the application of Heck v. Humphrey, and whether Marini was acting under color of law.  The Court next turns to the remaining issues raised in the Marini Motion.

### A.   Qualified Immunity

Marini argues that all of his actions were objectively reasonable and that "he should face no § 1983 liability for anything other than Plaintiff's claim . . . that Marini shot Plaintiff in the back while Marini was out of the vehicle and

39

standing up." [Mem. in Supp. of Marini Motion at 25.]

     The defense of qualified immunity protects police officers from liability for civil damages under 42 U.S.C. § 1983 when performing discretionary functions, unless the officers' conduct violates a "clearly established constitutional or statutory right of which a reasonable person would have known." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001). To apply this standard, the Court must first determine whether the officer's conduct, considered in the light most favorable to the party asserting the injury, violated a constitutional right. Id. ("If no constitutional right was violated, the court need not inquire further.") If the officer's conduct violated a constitutional right, the Court then considers whether the officer could "have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." Id.; see also Saucier v. Katz, 533 U.S. 194 (2001).

     . . . .

     Under the Fourth Amendment of the United States Constitution, "officers may only use such force as is 'objectively reasonable' under the circumstances." City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). To determine whether the force used was reasonable, court balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

     Determining whether a police officer's use of force was reasonable or excessive "requires careful attention to the facts and circumstances of each particular case" and a "'careful' balancing of an individual's liberty with the government's interest in the application of force.

40

> Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002)
> (quoting Graham, 490 U.S. at 396).  "Because such
> balancing nearly always requires a jury to sift
> through disputed factual contentions, and to draw
> inferences therefrom, we have held on many
> occasions that summary judgment or judgment as a
> matter of law in excessive force cases should be
> granted sparingly."  Id.

Dawkins v. City & Cnty. of Honolulu, Civ. No. 10-00086 HG-KSC,

2011 WL 1598788, at *9-10 (D. Hawai'i Apr. 27, 2011).

For the purposes of the instant motion, Defendants

concede that a law enforcement officer shooting a fleeing suspect

in the back would likely not prevail on a motion for summary

judgment based on qualified immunity.  [Mem. in Supp. of Marini

Motion at 25 n.8.]  Here, however, whether Marini's conduct

violated a clearly established constitutional right by subjecting

Plaintiff to excessive force turns on issues of fact that are in

dispute, including the circumstances of the initial encounter,

how Plaintiff allegedly assaulted Marini, and the circumstances

of the shooting.  The Court therefore DENIES the Marini Motion

with respect to qualified immunity.

**B.   Fourteenth Amendment Claim**

> Through the Fourteenth Amendment's due
> process clause, pre-trial detainees are entitled
> to be free of cruel and unusual punishment.  Bell
> v. Wolfish, 441 U.S. 520, 537 n.16, 99 S. Ct.
> 1861, 60 L. Ed. 2d 447 (1979); Simmons v. Navajo
> County, Ariz., 609 F.3d 1011, 1017-18 (9th Cir.
> 2010).  Failure to provide medical treatment
> amounts to cruel and unusual punishment when (1) a
> detainee has a "serious medical need" and (2)
> detention officials are "deliberately indifferent"
> to that need.  Jett v. Penner, 439 F.3d 1091, 1096

(9th Cir. 2006); <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  A serious medical need exists when, viewed objectively, "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." <u>Jett</u>, 439 F.3d at 1096 (citation and quotation omitted).

Deliberate indifference requires that a detention official must "know[ ] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. 1970.  The test is a subjective one because "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment."  <u>Id.</u> at 844, 114 S. Ct. 1970. Accordingly, a plaintiff must show that an official was "(a) subjectively aware of the serious medical need and (b) failed adequately to respond." <u>Conn v. City of Reno</u>, 591 F.3d 1081, 1096 (9th Cir. 2010) (citing <u>Farmer</u>, 511 U.S. at 828, 114 S. Ct. 1970). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." <u>Farmer</u>, 511 U.S. at 838, 114 S. Ct. 1970.

<u>Wereb v. Maui Cnty.</u>, 727 F. Supp. 2d 898, 912 (D. Hawai'i 2010).

Marini argues that he did not violate Plaintiff's

Fourteenth Amendment rights because his conduct does not "shock

the conscience," and that, because Plaintiff has alleged an

unlawful seizure, his alternative Fourteenth Amendment claim

should be dismissed.  [Mem. in Supp. of Marini Motion at 26.]

Plaintiff contends that there are issues of fact with respect to

his claim for violation of the Fourteenth Amendment for failure

to render aid.  Plaintiff argues that he had a due process right

to prompt medical attention as an uncharged and unconvicted

detainee.  [Mem. in Opp. to Marini Motion at 28-29.]

Here, the Court notes that Plaintiff does not dispute

that the incident lasted approximately forty seconds, from the

time he entered the parking lot to when Plaintiff fled in the

vehicle.  As a result, it appears that there was no opportunity

for Marini to provide medical aid due to the briefness of the

incident and because Plaintiff himself quickly fled.  Plaintiff

makes no showing sufficient to survive the motion.

Even assuming that such claims are not duplicative of

his Fourth Amendment claims, the Court finds that Plaintiff has

not provided sufficient evidence to create a question of fact

with respect to his failure to render aid or medical needs claim

under the Fourteenth Amendment.  The Marini Motion is therefore

GRANTED as to this claim.

### C.   Conditional Privilege

Marini asserts that Plaintiff's state law claims are

barred by the conditional privilege because Plaintiff fails to

establish actual malice by clear and convincing evidence.

> Under Hawaii law, non-judicial government
> officials acting in the performance of their
> public duties enjoy a "qualified or conditional
> privilege."  Towse v. State, 647 P.2d 696, 702
> (Haw. 1982).  The privilege protects the official
> from liability for tortious acts unless the
> injured party demonstrates by "clear and
> convincing proof" that the official was motivated

by "malice and not by an otherwise proper
purpose." <u>Id.</u>  For torts other than defamation,
"actual malice" must be proven to overcome the
privilege. <u>Wereb v. Maui County</u>, 727 F.Supp.2d
898, 924 (D. Haw. 2010).  "Actual malice" for
purposes of the conditional privilege is defined
in its "ordinary and usual sense" to mean "the
intent, without justification or excuse, to commit
a wrongful act, reckless disregard of the law or
of a person's legal rights, and ill will;
wickedness of heart." <u>Awakuni v. Awana</u>, 165 P.3d
1027, 1042 (Haw. 2007).

Because actual malice involves intent,
reckless disregard, or ill will, the actual malice
requirement is "incompatible with a claim based on
negligence." <u>Bartolome v. Kashimoto</u>, 2009 WL
1956278, at * 2 (D. Haw. 2009) ("[W]hen 'actual
malice' must be shown, a non-judicial official's
qualified privilege provides complete immunity
from negligence claims."); <u>see also</u> <u>Tagawa v. Maui
Pub. Co.</u>, 448 P.2d 337, 341 (Haw. 1968) ("[M]ere
negligence is not 'actual malice.'")[.]

. . . .  The existence of malice is
"generally a question for the jury." <u>Runnels v.
Okamoto</u>, 525 P.2d 1125 (Haw. 1974).

<u>Dawkins</u>, 2011 WL 1598788, at *15.

Plaintiff argues that this "actual malice" standard

does not apply.  The Court disagrees and applies the standard

used by Hawai'i courts as well as this district court. <u>See</u>,

<u>e.g.</u>, <u>Bartolome</u>, 2009 WL 1956278; <u>Edenfield v. Estate of Willets</u>,

Civ. No. 05-00418 SOM-BMK, 2006 WL 1041724, at *12 (D. Hawai'i

Apr. 14, 2006) ("This court does not read <u>Towse</u> as requiring

application of the 'reasonable man' test to the facts of this

nondefamation case.  To hold otherwise would effectively remove

the 'malice' requirement and run contrary to the Hawaii Supreme

Court's admonition that only the most guilty of officials are liable for their tortious acts.").

Although proving subjective motivation by clear and convincing evidence may be a difficult standard for Plaintiff to meet, "that is the burden that the Hawaii Supreme Court has adopted in its effort to balance competing interests." Id. at *13. Accordingly, whether Marini was objectively justified in the use of deadly force is not relevant to the determination of whether he was subjectively motivated by a proper or improper purpose. Marini states that he "acted only in self-defense to defend [him]self from an unknown attacker with unknown intentions, who had already indicated extremely hostile and violent behavior towards me." [Marini Decl. at ¶ 7.] Plaintiff points to nothing in the record that raises a genuine issue of fact as to whether Marini was motivated by actual malice, rather than by a desire to protect the public or himself, but relies on his arguments that Marini shot him multiple times in the back. Because Plaintiff fails to elicit evidence to counter Marini's showing that he was not motivated by an improper purpose, Plaintiff cannot establish actual malice by clear and convincing evidence. See Edenfield, 2006 WL 1041724, at *12 n.8 ("The number of shots fired is not clear and convincing evidence of malice."). Accordingly, even though the existence of malice is generally a question for the jury, the Court finds that there is

no evidence of malice and summary judgment is warranted.  The Marini Motion is GRANTED with respect to Marini's entitlement to the state law conditional privilege.  As a result, Plaintiff's state law claims are barred because Marini is shielded from liability for his allegedly tortious acts.  To the extent Marini is not liable with respect to the state law claims, the City is not vicariously liable to Plaintiff, and summary judgment on those claims is granted to the City.

In sum, the Marini Motion is GRANTED with respect to Plaintiff's state law claims based on the application of the conditional privilege, GRANTED with respect to Plaintiff's Fourteenth Amendment claim, and DENIED in all other respects.

## III. **Plaintiff's Motion**

### A. **Fourth Amendment Claim**

Plaintiff seeks partial summary judgment on his claims that Marini shot him twice in the back while he was unarmed, without providing any warnings or identifying himself as a police officer, and that such conduct constitutes excessive force in violation of the Fourth Amendment.  Defendants argue that there are disputed issues of material fact, and that Plaintiff has not established that he is entitled to summary judgment on each of the elements of his § 1983 claims.  As set forth above, the Court finds that there are issues of fact regarding whether Marini was acting under color of law, and the specific events alleged in the

46

First Amended Complaint, including the circumstances of the initial encounter, how Plaintiff allegedly assaulted Marini, and the circumstances, chronology, and location of the shooting.  For these reasons, Plaintiff is not entitled to summary judgment on his Fourth Amendment claim and the motion is DENIED.

       **B.**   <u>**Sanctions**</u>

       Plaintiff seeks further sanctions for Defendants' failure to produce missing photographs taken of Marini the day after the incident.  The Plaintiff argues that they would show that Marini did not suffer serious injuries during the altercation and that he exaggerated the level of threat to cover up his excessive use of force.  Plaintiff contends that if he had punched Marini three times, there should have been bruising, swelling, or abrasions, which would be evident in the photographs Plaintiff already has black and white copies of the photographs, but states that they are poor quality.  He asks the Court to grant summary judgment and hold that the missing evidence would have refuted Defendants' claim that the force was justified because of the severity of the attack.

       The copies of the two photographs were apparently produced to Plaintiff in discovery by the Prosecutor's Office to defense counsel in the UEMV case against Plaintiff.  [Yuen Decl. at ¶ 3.]  Neither the Prosecutor's Office, HPD, nor the City's Department of Corporation Counsel have located originals of these

47

two photographs, purportedly taken on March 30, 2009.

According to Marini, he never had possession, custody, or control of the photographs.  [Marini Decl. at ¶ 2.] Defendants also note that Plaintiff has already received monetary sanctions for the failure to locate the specific photographs. According to Defendants, they have already produced to Plaintiff better photographs that show the exact area where Marini claims to have been struck.  Defendants also set forth the efforts taken to locate the two missing photographs internally, and at the Department of the Prosecuting Attorney.  The Prosecutor's Office located the criminal case file in its "Pau Room," and confirmed that the criminal file did not contain any originals or copies of the two photographs, and that the only remaining police report in the file was a detective's closing report, which most likely was an attachment to the pre-sentence investigation report.  [Yuen Decl. at ¶ 8.]  The HPD documents clerk initially checked with HPD's Photo Lab, Evidence Room, and reviewed the police reports and administrative files generated in this case, but she was not able to locate the photographs.  She contacted the internal investigators, and followed up several times, but none had any knowledge of the photographs.  She also inquired with Major William Chur of District 5-Kalihi where the photographs were taken, who then checked with his staff and reported that nobody had any knowledge of the photographs.  [Murobayashi Decl. at

¶¶ 1-7.]  Later, she contacted Richard Perron in the Scientific Investigation Section, but he told her that he did not take the photographs and had no information about them.  She also contacted Lieutenant Randall Borges of the Criminal Investigation Division, who did not have any information about the photographs. [Id. at ¶¶ 14-15.]

The Ninth Circuit has held that a district court has the authority to impose sanctions for spoliation pursuant to: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery." Leon v. IPX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (citing Fjelstad v. Am. Honda Motor Co., 762 F.2d 1334, 1337-38 (9th Cir. 1985);  Fed. R. Civ. P. 37(b)(2)(c)).

In light of the Court's prior sanctions, the Court does not find that further sanctions in the form of the legal ruling requested by Plaintiff is appropriate.  First, Marini did not have control or possession of the photographs, but would be punished equally under the Plaintiff's requested sanction. Although the City has not produced originals of the two photographs, it has already been sanctioned for its failure to do so.  There is no evidence of the City intentionally withholding the photographs or making any false representations regarding

49

their whereabouts.  The Court notes that there is no indication

of willful spoliation.  To the extent Plaintiff is prejudiced by

the City's failure to produce these specific photographs, the

Court agrees that it is impossible to know what these photographs

might have shown, but that they might have shown that Marini did

not suffer any bruising to his head or face on the day after he

was assaulted by Plaintiff.  Even assuming that the day-after

photographs show no additional injury to Marini, however, they

are not critical to Plaintiff's case; although the photographs

may have helped Plaintiff prove his positions on these issues,

the absence of the photographs does "not eclipse entirely the

possibility of a just result."  See Nursing Home Pension Fund v.

Oracle Corp., 254 F.R.D. 559, 564 (N.D. Cal. 2008) (citation and

quotation marks omitted).  Plaintiff has high quality, close-up

photographs showing Marini's injuries taken the same day.  The

Court therefore finds that, although Plaintiff is prejudiced by

the fact that the photographs are unavailable, his prejudice is

not so severe as to warrant the sanctions requested.  Plaintiff's

Motion is DENIED with respect to its request for specific

sanctions.

       The Court finds that a lesser sanction is warranted,

however, which would allow the case to be resolved on its merits,

while still preventing the City from benefitting from the absence

of the photographs.  The Court will sanction the City by allowing

50

Plaintiff to present evidence at trial regarding the City's failure to preserve the photographs.  Such testimony would, however, be subject to, or may even be excluded under, any evidentiary rulings.  The Court will order the City to produce a live witness with personal knowledge about the photographs for examination during Plaintiff's case in chief.  Plaintiff may call the witness at any time during his case in chief, but must provide reasonable notice to the City.

## CONCLUSION

On the basis of the foregoing, Defendant City and County of Honolulu's Motion for Summary Judgment, filed January 30, 2013, is GRANTED IN PART and DENIED IN PART.  The City Motion is GRANTED with respect to Plaintiff's claims for § 1983 municipal liability based upon failure to train or investigate theories, but DENIED in all other respects.  Defendant Keith David Marini's Motion for Summary Judgment, filed January 30, 2013, is GRANTED IN PART and DENIED IN PART.  The Marini Motion is GRANTED with respect to Plaintiff's state law claims based on the application of the conditional privilege, and Plaintiff's Fourteenth Amendment claim, and DENIED in all other respects. Plaintiff Kiha Silva's Motion for Partial Summary Judgment and for Sanctions for Defendants' Loss or Destruction of Material Evidence, filed January 30, 2013, is DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2013.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**KIHA SILVA V. CITY AND COUNTY OF HONOLULU, ET AL; CIVIL NO. 11-00561 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART (1) DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT AND (2) DEFENDANT KEITH DAVID MARINI'S MOTION FOR SUMMARY JUDGMENT, AND DENYING (3) PLAINTIFF KIHA SILVA'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR SANCTIONS FOR DEFENDANTS' LOSS OR DESTRUCTION OF MATERIAL EVIDENCE**